# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### No. 20-1882V
### UNPUBLISHED

| | |
|---|---|
| KELLY JOYCE,<br><br>　　　　　　　Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>　　　　　　　Respondent. | Chief Special Master Corcoran<br><br>Filed: December 14, 2021<br><br>Special Processing Unit (SPU);<br>Findings of Fact; Site of Vaccination<br>Influenza (Flu) Vaccine; Shoulder<br>Injury Related to Vaccine<br>Administration (SIRVA) |

*Jimmy A. Zgheib, Zgheib Sayad, P.C., White Plains, NY*, for Petitioner.

*Nancy Tinch, U.S. Department of Justice, Washington, DC*, for Respondent.

## FINDINGS OF FACT[1]

On December 16, 2020, Kelly Joyce filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a left shoulder injury related to vaccine administration ("SIRVA"), a defined Table injury, after receiving an influenza ("flu") vaccine on November 8, 2019. Petition at 1, ¶¶ 4, 38-39. Petitioner further alleges that her SIRVA was caused-in-fact by the flu vaccine she received. *Id.* at ¶¶ 38, 40. Acknowledging that the vaccine record does not indicate the site of administration, Petitioner nevertheless maintains there is preponderant evidence to establish the vaccine

---

[1] Because this unpublished Fact Ruling contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Fact Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

was administered in her left shoulder as alleged. *Id.* at ¶ 4. The case was assigned to the Special Processing Unit of the Office of Special Masters.

For the reasons discussed below, I find the flu vaccine was most likely administered in Petitioner's left shoulder, as alleged, and that onset of Petitioner's pain occurred within 48 hours of vaccination.

## I.     Relevant Procedural History

The day after she filed the Petition, Ms. Joyce filed an affidavit and most of the medical records required under the Vaccine Act. Exhibits 1-16, ECF No. 6; *see* Section 11(c). Over the subsequent seven-month period, she filed additional prior and updated medical records. Exhibits 17-24, ECF Nos. 11-14, 16-17. Petitioner also filed a status report citing entries in her medical records which, she argues, show she received the November 8, 2019 vaccine in her left shoulder as alleged. Status Report, filed July 19, 2021, ECF No. 18.

On September 21, 2021, Respondent filed a status report indicating that "[a]t this time, Respondent's counsel does not wish to file briefing regarding the site of vaccination." Status Report, ECF No. 21. In October and November 2021, Petitioner filed additional medical records including a copy of her worker's compensation settlement agreement. Exhibits 25-30, ECF Nos. 22, 24-25. Petitioner also filed a status report reiterating her request for a fact ruling regarding the site of vaccination and disagreeing with Respondent's assertion that I should delay this factual determination until the HHS review is completed. ECF No. 23.

Given the current backlog of vaccine cases awaiting the HHS review which has existed for several years, I have consistently encouraged the parties to vaccine injury cases to identify and address factual issues which do not require medical expertise, and thus can be decided prior to the HHS review. The factual issue regarding vaccine administration situs in this case fits squarely in that category. For the sake of judicial efficiency, I will simultaneously address the issue of the onset of Petitioner's pain. These issues are now ripe for adjudication.

## II.    Issue

At issue is whether (a) Petitioner received the vaccination alleged as causal in his injured left arm, and (b) Petitioner's first symptom or manifestation of onset after vaccine administration (specifically pain) occurred within 48 hours as required in the Vaccine Injury Table and Qualifications and Aids to Interpretation ("QAI") for a Table SIRVA. 42

C.F.R. § 100.3(a) XIV.B. (2017) (Table entry for SIRVA following the influenza vaccination); 42 C.F.R. § 100.3(c)(10)(ii) (required onset for pain listed in the QAI).

### III. Authority

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Human Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. In *Lowrie*, the special master wrote that "written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Lowrie*, 2005 WL 6117475, at *19.

The United States Court of Federal Claims has recognized that "medical records may be incomplete or inaccurate." *Camery v. Sec'y of Health & Human Servs.*, 42 Fed. Cl. 381, 391 (1998). The Court later outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Human Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery*, 42 Fed. Cl. at 391 (citing *Blutstein v. Sec'y of Health & Human Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Human Servs.*, 569

F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Human Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing Section 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Human Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

## IV. Finding of Fact

I make the following findings regarding site of vaccination and onset after a complete review of the record, including medical records, affidavits, and other additional evidence filed showing:

- The vaccine record indicates Petitioner received a flu vaccine on November 8, 2019, at her placement of employment - Tufts Medical Center. Exhibit 2 at 4. The method and site of vaccination are not indicated. *Id.* Email exchanges between Petitioner's counsel and personnel at Tufts Medical Center indicate the site of vaccination is not recorded in the electronic database. *Id.* at 1-3.

- In her affidavit, Petitioner alleged that she received the flu vaccine in her left, non-dominant shoulder. Exhibit 3 at ¶ 3. She added that she "always received [her] annual flu shot in [her] non-dominant left arm, and . . . specifically recall[ed] that [she] received the November 8, 2019 flu shot in [her] left shoulder." *Id.* Petitioner described pain which began a few hours after vaccination and increased to a severe level which prevented her from performing her duties as a nurse. *Id.* at ¶ 5.

- Six days post-vaccination, on the morning of November 14, 2019, Petitioner sought medical care from a provider at Tufts Medical Center, Dr. John Doyle. Exhibit 4 at 12. The description she provided at this visit – of left shoulder pain which began several hours after vaccination and which gradually increased until severe – matches the assertions in Petitioner's affidavit. Petitioner was referred to the orthopedic clinic and excused from work until re-evaluated. *Id.*

- At her orthopedic appointment that same day, Petitioner complained of "left shoulder pain after receiving a flu shot on 11/8/19." Exhibit 4 at 38 (November 14, 2019 orthopedic visit). She indicated that she returned to work post-vaccination and did not recall any complications until the next day. *Id.* Upon examination, the orthopedist, Dr. Charles Cassidy observed no swelling, warmth, or tenderness upon palpitation. He diagnosed Petitioner with biceps tendonitis, "likely due to inflammation around her biceps tendon." *Id.* at 40.

- The next day on November 15, 2019, Petitioner completed an Employee Incident Report regarding a flu shot injury to her left arm. Exhibit 4 at 117.

- On November 18, 2019, Petitioner returned for a follow-up appointment with Dr. Doyle. Exhibit 4 at 13. Relaying Dr. Cassidy's opinion – that there was not an infectious process occurring and that the pain was due to biceps tendonitis, Petitioner described sharp pain with certain movements. Dr. Doyle excused Petitioner from work for the rest of the week. *Id.*

- When seen again at the orthopedic clinic on November 25, 2019, Petitioner again reported severe pain which began the day after her November 8, 2019 vaccination. Exhibit 5 at 14. Dr. Cassidy diagnosed Petitioner with adhesive capsulitis and discussed treatment options. Petitioner opted for physical therapy ("PT"). *Id.* at 16.

- Following this November 25, 2019 orthopedic visit, Petitioner provided a telephone update to Dr. Doyle. Exhibit 4 at 13. She indicated she would contact the local PT office and would provide another update on December 2, 2018. In this record, it was noted that Petitioner had declined a steroid injection. *Id.*

- When seen again by Dr. Doyle at 8:10AM on December 2, 2019, Petitioner expressed an interest in receiving a steroid injection from Dr. Cassidy, who she believed was seeing patients that day. Exhibit 4 at 14.

- Later that day, Dr. Cassidy provided the requested steroid injection. Exhibit 4 at 32. He noted that Petitioner "continues to have vague shoulder symptoms following a flu vaccination . . . [but] symptoms [which were] not consistent with any one diagnosis." *Id.* He assessed Petitioner as having "[s]ubacromial impingement of [the] left shoulder." *Id.*

5

- During her first PT session from 1:00PM until 2:00PM on December 2, 2019, Petitioner again reported left shoulder pain and frozen shoulder due to the administration of the flu vaccine on November 8, 2019. Exhibit 6 at 8. Attending a total of four PT sessions in December 2019 and failing to return thereafter, Petitioner was discharged on April 6, 2020. Exhibit 6 at 12-19.

- When treated by Dr. Doyle on December 9, 2019, Petitioner reported slight improvement following the cortisone injection and PT. Exhibit 4 at 14. She was excused from work for the remainder of the week. *Id.*

- Seen again by Dr. Cassidy on January 6, 2020, it was noted that Petitioner's injury was most consistent with adhesive capsulitis, but that she was recovering faster than expected given the nature of her disease. Exhibit 4 at 28.

- Petitioner provided another telephone update to Dr. Doyle on January 14, 2020, indicating she continued to have left shoulder pain and difficulties with certain movements. Exhibit 4 at 16. She was instructed to continue PT and remain at home. *Id.*

- At her next appointment with Dr. Doyle on January 28, 2020, Petitioner continued to report left shoulder pain and difficulties performing certain tasks. Exhibit 4 at 17.

- On February 7, 2020, Petitioner underwent an MRI. Exhibit 4 at 23. She again reported "left shoulder pain post-vaccination." *Id.* The MRI revealed "[f]ull-thickness tear of the anterior supraspinatus . . . with moderate underlying tendinosis, . . . [p]robable focal tear of the anterior labrum, . . . [m]arked fluid within the subacromial subdeltoid bursa." *Id.*

- Petitioner has provided the documentation connected to her worker's compensation claim which includes an April 13, 2020 email from Dr. Todd M. O'Brien and an August 6, 2020 letter from Dr. David C. Morley, Jr., communicating both physician's opinions that Petitioner's left shoulder injury was due to the flu vaccine she received on November 8, 2019. Exhibit 15 at 1-2 (Dr. O'Brien's email); Exhibit 11 at 4-6 (Dr. O'Brien's letter).

In every post-vaccination record containing a medical history, from the time she first sought treatment on November 14, 2019 (only six days post-vaccination), Petitioner *consistently* described left shoulder pain as beginning a few hours post-vaccination,

6

increasing thereafter to a severe level which interfered with her ability to work by the next day. Without fail, she attributed her injury to the flu vaccine she received on November 8, 2019. Petitioner provided extremely consistent accounts of her injury and the onset of her pain. While these entries were based upon information provided by Petitioner, they still should be afforded greater weight than more current representations, as they were uttered contemporaneously with Petitioner's injury for the purposes of obtaining medical care.

The Federal Circuit has stated that "[m]edical records, in general, warrant consideration as trustworthy evidence . . . [as they] contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions." *Cucuras*, 993 F.2d at 1528 (emphasis added). Thus, the Circuit has instructed that greater weight should be accorded to this information even when the information is provided by Petitioner.[3]

The vaccine record clearly supports Petitioner's claims of receiving the flu vaccine in her left arm on November 8, 2019, and experiencing left shoulder pain within 48 hours thereafter. There is nothing in the vaccine record or medical records in this case to indicate administration was in Petitioner's other arm (right) or that the onset of Petitioner's pain was not within 48 hours as Petitioner consistently reported. And the fact that situs is not *itself* corroborated by a medical record does not rebut the combination of Petitioner's contemporaneous reports to treaters of a left-shoulder vaccination and her own witness statements. Thus, I find there is preponderant evidence to establish the vaccination alleged as causal in this case was administered to Petitioner in the left deltoid, and that onset of Petitioner's pain occurred within 48 hours of vaccination.

## V.    Scheduling Order

Based on recent data, I expect the HHS review to be completed in this case in February 2022. In the meantime, it is appropriate for Petitioner to forward a demand and supporting documentation to Respondent prior to the HHS review. Thus, Petitioner should finalize her demand which she may forward to Respondent, along with her supporting documentation, at any time.

---

[3] Additionally, Petitioner has provided evidence, related to Petitioner's worker's compensation claim, that two different physicians concluded her injury was due to the flu vaccine she received on November 8, 2019. It would be illogical for these physicians to have reached this conclusion absent a belief that Petitioner received the vaccine in question in her left, injured arm (although that belief does not independently establish situs).

7

**Petitioner shall file a status report indicating the date by which she conveyed or expects to convey her demand and supporting documentation to Respondent by no later than <u>Friday, January 14, 2022</u>.**

**Respondent shall file a status report indicating how he intends to proceed by no later than <u>Tuesday, February 15, 2022</u>.**

**IT IS SO ORDERED.**

<u>**s/Brian H. Corcoran**</u>
Brian H. Corcoran
Chief Special Master