# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS
## No. 20-1882V

KELLY JOYCE,

                Petitioner,

v.

SECRETARY OF HEALTH AND
HUMAN SERVICES,

                Respondent.

Chief Special Master Corcoran

Filed: February 20, 2024

*Jimmy A. Zgheib, Zgheib Sayad, P.C., White Plains, NY, for Petitioner.*

*Ryan Daniel Pyles, U.S. Department of Justice, Washington, DC, for Respondent.*

## DECISION AWARDING DAMAGES[1]

On December 16, 2020, Kelly Joyce filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleged that she suffered a left shoulder injury related to vaccine administration ("SIRVA"), a defined Table injury or, in the alternative a causation-in-fact claim, after receiving an influenza ("flu") vaccine on November 8, 2019. Petition at 1, ¶¶ 4, 38-40.

For the reasons set forth below, incorporating the agreement of the parties on some issues, and consistent with my earlier ruling related to Petitioner's pain and

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

suffering award and unreimbursed expenses,[3] I find that Petitioner is entitled to an award of damages in the amount **$1,569,302.82**, reflecting $1,325,375.00 for past and future lost wages, $215,000.00 for past pain and suffering, $26,063.60 for future pain and suffering, and $2,864.22 for past unreimbursed expenses.

## I.    Relevant Procedural History

On December 17, 2020 (the day after this claim was initiated), Ms. Joyce filed the affidavit and medical records required by the Vaccine Act. Exhibits 1-16, ECF No. 6. On February 5, 2021, the case was activated and assigned to the Special Processing Unit (OSM's process for attempting to resolve certain, likely-to-settle claims). ECF No. 8. Over the subsequent six-month period, Petitioner continued to file any updated medical records and relevant documentation. Exhibits 17-24. ECF Nos. 11-17.

Because the vaccine record did not indicate the site of vaccination, after giving the parties the opportunity to provide additional evidence and briefing (ECF No. 20), I issued a fact ruling, determining the flu vaccine was most likely administered in Petitioner's left shoulder, as alleged. *See Joyce v. Sec'y of Health & Hum. Servs.,* No. 20-1882V, 2021 WL 6504389 (Fed. Cl. Spec. Mstr. Dec. 14, 2021) (ECF No. 26). For the sake of judicial efficiency, I simultaneously addressed the issue of the pain onset, finding it occurred within 48 hours. *Id.* at *1. Prior to and after I issued this ruling, Petitioner continued to provide additional updated medical records, including documentation from her workers' compensation claim. Exhibits 25-34, ECF Nos. 22, 24-25, 29, 32, 34-35.

On April 29, 2022, Respondent filed a Rule 4(c) Report, stating that, while reserving his right to appeal my situs and onset determinations, he believed that Petitioner had met the requirements for a Table SIRVA. ECF No. 38. Four days later, I issued a ruling, finding Petitioner entitled to compensation. ECF No. 39.

During the subsequent six-month period, the parties attempted to informally resolve the issue of damages. *See,* e.g., Status Reports, filed July 14, 2022, ECF Nos. 45-46; Status Report, filed Oct. 19, 2022, ECF No. 56. Throughout this time, Petitioner continued to file updated medical records and documentation related to her claim for lost wages and unreimbursable expenses, including a report from Petitioner's vocational expert. Exhibits 35-52, ECF Nos. 41, 44, 47, 52-53, 57.

---

[3] *Joyce v. Sec'y of Health & Hum. Servs.,* No. 20-1882V, 2023 WL 6811015 (Fed. Cl. Spec. Mstr. Sept. 12, 2023).

On November 8, 2022, the parties informed me they were unable to reach an informal agreement and requested that I conduct a hearing to determine the appropriate amount of damages. ECF No. 59. Prior to the September 2023 hearing, Respondent filed his vocational expert's report, and Petitioner filed additional updated medical records, other evidence, and a supplement report from her vocational expert. Exhibits A-B, ECF Nos. 60, 67; Exhibits 53-70, ECF Nos. 61-65, 68, 73, 75. Pre-hearing briefing revealed additional evidence and argument related to lost wages would be needed following the hearing. *See* Order, issued Aug. 23, 2023, ECF No. 74.

At the damages hearing, conducted on September 11, 2023, I issued an oral ruling, finding Petitioner entitled to $215,000.00 for past pain and suffering, $1,000.00 per year for future pain and suffering, and $2,864.22 for past unreimbursed expenses. *Joyce*, 2023 WL 6811015, at *2 (ECF No. 77). I also provided guidance related to past and future lost wages and set deadlines for expert reports from the parties' economists regarding that compensation, as well as the net present value of the future pain and suffering award. *Id.*

During the subsequent three-month period, Petitioner filed two expert reports from his economist and a letter related to Petitioner's workers' compensation claim, and Respondent filed his economist's expert report. *See* Exhibits 71-74, ECF Nos. 78-79, 86; Exhibit C, ECF No. 84. In their most recent briefs, the parties informed me they had agreed upon the appropriate amount of past and future lost wages ($1,325,375.00), and dispute only the appropriate net present value of the future pain and suffering award. Respondent's Brief on Damages ("Res. Latest Brief"), filed Dec. 1, 2023, at 6, ECF No. 88; Petitioner's Reply to Respondent's Brief on Damages ("Pet. Latest Brief"), filed Dec. 1, 2023, at 1, ECF No. 89 (waiving her earlier request for compensation due to a loss of household services and accepting Respondent's proposed amount of lost wages).

## II.    Net Present Value of Projected Pain and Suffering Award

Due to the Vaccine Act's statutory cap of $250,000.00 for any pain and suffering award, which must be applied prior to the reduction of the portion attributable to *future* pain and suffering to its net present value,[4] the future award in this case is limited to $35,000.00.[5] The parties agree that, based upon Petitioner's life expectancy, she would otherwise be entitled to a greater award. Res. Latest Brief at 5; Pet. Latest Brief at 2 n.1.

---

[4] *See* Section 15(a)(4) (statutory limit for actual and projected pain and suffering); Section 15(f)(4)(A) (requirement regarding net present value for future compensation); *Youngblood v. Sec'y of Health & Hum. Servs.*, 32 F.3d 552, 554-55 (Fed. Cir.1994) (requiring the application of the statutory cap before any projected pain and suffering award is reduced to net present value).

[5] This amount is calculated by subtracting the amount awarded for Petitioner's past pain and suffering, $215,000.00, from the statutory cap of $250,000.00.

To reduce this amount to its net present value, Petitioner proposes that I apply the multipronged approach previously employed in *Dillenbeck*, which uses a discount rate of one-percent for the first fifteen years and two-percent thereafter, resulting in a future pain and suffering award of $26,063.60. Pet. Latest Brief at 1-2 (citing *Dillenbeck v. Sec'y of Health & Hum. Servs,* No. 17-0428V, 2019 WL 4072069, at *15 (Fed. Cl. Spec. Mstr. July 29, 2019)). Asserting that discount rates have historically ranged between one and three-percent, he insists that this approach already accounts for fluctuating treasury interest rates. *Id.* at 2 (citing *Mulloy v. Sec'y of Health & Hum. Servs.,* No. 19-1396V, 2023 WL 2620653, at *10 (Fed. Cl. Spec. Mstr. Mar. 24, 2023)).

Respondent counters that a two-percent discount rate for all years is more appropriate, resulting in a future pain and suffering award of $25,156.00. Res. Latest Brief at 6. Emphasizing that the ruling in *Dillenbeck* was based upon a decision which is more than seven years old (*Neiman*), he maintains that *Dillenbeck* "is objectively and patently outdated." *Id.* (citing *Dillenbeck*, 2019 WL 4072069, at *15); *see also Neiman v. Sec'y of Health & Hum. Servs.,* No. 15-0631V, 2016 WL 7741742 (Fed. Cl. Spec. Mstr. Oct. 31, 2016)). He stresses that the basis for applying the rates in *Dillenbeck,* historically low treasury rates, no longer applies. Res. Latest Brief at 6.

To further support his position, Respondent cites the report from his economist, Patrick F. Kennedy, Ph.D., which contains a detailed section regarding the appropriate discount rate to be used when calculating the net present value of the *future lost wages* award. Res. Latest Brief at 5 (citing Exhibit C at 8). As Dr. Kennedy explains, the appropriate discount rate to be used during this calculation is based upon two factors: 1) the growth in future wages and 2) the interest a lump sum award will earn over time. Exhibit C at 8. Based upon economic projections which show the current higher interest and inflation rates are expected to decrease moderately in 2025 and 2026, Dr Kennedy concluded the second criteria (a factor relevant to all future awards) translates to a discount rate of 1.5 percent. He further reduced the rate by .2 percent to account for wage growth (a factor relevant only to future *lost wages* compensation). Exhibit C at 8-14. And the parties have accepted these calculations.

Although Dr. Kennedy utilized a two percent discount rate when calculating the net present value of the future pain and suffering award, he clearly states that he is doing so at Respondent's direction. Exhibit C at 8. If I instead used a discount rate 1.5 percent (as was accepted for the lost wages reduction), without any modification for wage growth, the

resulting amount would be $27,075.59,[6] an amount greater than even Petitioner's proposed amount. Thus, I find that Dr. Kennedy's report offers only tepid support for the two-percent discount rate proposed by Respondent. Instead, it lends credence to Petitioner's argument that the multipronged approach she proposes more properly accounts for rate fluctuations, although arguably the order of the rates should be reversed.

I agree that the lower treasury rates which formed the basis of the multipronged approach Petitioner proposes no longer exist. However, as Dr. Kennedy opines, the current higher rates are unlikely to continue for more than a few years, certainly not for the 35-year period covered by the future pain and suffering award. Therefore, I find the amount proposed by Petitioner reflects a more accurate reflection of the appropriate net present value. Respondent has not provided sufficient evidence to warrant the use of the two-percent discount rate he proposes for the entire thirty five-year period.

## Conclusion

For all of the reasons discussed above, **I will adopt the net present value of Petitioner's future pain and suffering proposed by Petitioner.** Pursuant to my earlier ruling, I therefore award Petitioner **$215,000.00 for actual pain and suffering, $26,063.60 for projected pain and suffering, and $2,864.22 for her actual unreimbursable expenses.** Furthermore, I find the parties' agreed upon amount of **actual and projected lost wages, $1,325,375.00 is reasonable.**

**Thus, I award Petitioner a lump sum payment of $1,569,302.82, representing $1,325,375.00 for actual and projected lost wages, $215,000.00 for actual pain and suffering, $26,063.60 for projected pain and suffering, and $2,864.22 for actual unreimbursable expenses in the form of a check payable to Petitioner.** This amount represents compensation for all damages that would be available under Section 15(a).

The clerk of the court is directed to enter judgment in accordance with this decision.[7]

---

[6] This result is obtained when designating yearly payments beginning one year from the date of this Decision, compounding annually. *See* https://accuratecalculators.com/present-value-of-an-annuity-calculator (last visited Feb. 20, 2024).

[7] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.

**IT IS SO ORDERED.**

<u>**s/Brian H. Corcoran**</u>
Brian H. Corcoran
Chief Special Master